## D. and J. GRAY *vs.* PAYNE.

A parol agreement was entered into between the plaintiffs and defendant, by which the former were to sell to the latter four hogs, which the defendant was to take into his possession and slaughter and dress, and pay for them at the rate of $5 per hundred weight, to be secured by an approved note. The hogs were accordingly delivered to the defendant, and taken by him to his slaughter house, and killed and dressed, and their weight found to be 1511¼ lbs.; and a note was tendered to the plaintiffs for the amount of the pork at the stipulated price. *Held* that there was a full and complete delivery of the property, within the statute of frauds; that the title vested in the defendant, upon his offering to comply with the conditions of his agreement; and that the plaintiffs could not rescind the contract and sue for the value of the hogs.

APPEAL by the defendant from a judgment rendered at a special term, on the report of a referee. The facts appear sufficiently in the opinion of the court.

*S. Mathews,* for the appellant.

*S. Hubbard,* for the respondents.

*By the Court,* WELLES, J. The action is in the nature of trover, to recover the value of four hogs, which the plaintiffs allege the defendant unlawfully converted and disposed of to his own use. On the 14th day of October, 1850, the plaintiffs and defendant entered into a parol agreement, by which the former were to sell to the latter the four hogs in question, which the defendant was to take into his possession and slaughter and dress at his own expense; when dressed the hogs were to be weighed, and the defendant agreed to pay for them $5 per cwt. to be secured by an approved note on interest, at forty days. The hogs were delivered by the plaintiffs to the defendant, to be by him slaughtered, in pursuance of the agreement, and were accordingly taken by the defendant to his slaughter house and were killed and dressed by the defendant, and the next morning were weighed by the parties, and their weight ascertained to be 1511¼ pounds. Some disagreement then arose between the

parties as to the entrail fat, and the loss in weight in consequence of the hogs hanging over night. One of the plaintiffs declared that unless this fat was weighed, he would take the pork away. The defendant however procured a good note for the value of the pork at the stipulated price, which was tendered to the plaintiffs; but they refused to take the note, and forbade the defendant taking the pork. In the opinion of the referee, which accompanies his report, he says: "I am clearly of the opinion that the defendant did in all respects comply with the terms of the contract. He agreed to buy the hogs and the plaintiffs agreed to sell them; the killing, weighing and dressing, were the only means agreed upon to ascertain the price to be paid; after all was taken away that is usually removed by that process, there was no more propriety in weighing the entrail fat than there would have been in weighing the heart, or liver. By the terms of the contract, all are excluded from the weight. Nor do I think the plaintiffs could justly complain of the trifling loss in weight occasioned by the cutting open the hogs and removing their heads. The defendant had agreed to dress the hogs, and I think was bound to do all that a prudent man would at that time have done, to preserve the meat; the evidence shows that he did nothing more."

These views of the referee, I think are fully warranted by the evidence. He however held that there was no such *delivery* of the hogs as passed the title from the plaintiffs to the defendant; and reported in favor of the plaintiffs, against the defendant, for $77,32, being the value of the hogs at the price agreed on, with interest from the time of the sale; not allowing any thing for shrinkage or entrail fat. Judgment was entered upon the report, for the sum mentioned, together with costs.

It appears from the opinion of the referee, that he placed his decision upon the statute of frauds, (1 *R. S.* 136, § 3,) which provides that "every contract for the sale of any goods, chattels or things in action, for the price of fifty dollars or more, shall be void, unless, 1. A note or memorandum of such contract be made in writing and be subscribed by the parties to be charged thereby; or, 2. Unless the buyer shall accept and receive part

Gray v. Payne.

of such goods, or the evidences, or some of them, of such things in action; or, 3. Unless the buyer shall, at the time, pay some part of the purchase money." The referee was of the opinion that there was no acceptance or receiving by the defendant of the property in question, within the meaning of the statute; and as the contract was not in writing, and the price to be paid was more than $50, and no part of the purchase money was paid at the time of making the contract, the same was void; and that the transaction did not therefore vest the title in the defendant. In this we think the referee committed an error. We think there was a full and complete delivery of the property. True, it was a conditional one, depending for its efficacy, upon the performance by the defendant of the stipulations entered into by him, which the referee decided, and we think correctly, had been fully complied with. If the defendant had neglected to procure the note for the purchase price of the property, according to the agreement, the plaintiffs might on that ground, have rescinded the agreement, and taken the property, or recovered its value in an action. It would be extending the statute farther than any adjudged case that I have met with has gone, to hold that on a sale for cash, and delivery to the purchaser, the seller may rescind the sale and reclaim the property, when the purchaser, after receiving the goods, offers payment of the purchase price.

The case of *Shindler* v. *Houston*, (1 *Comst.* 261,) cited by the referee and the plaintiff's counsel, entirely fails to support the position contended for. That case shows, that to constitute a delivery and acceptance of goods, such as the statute requires, something more than mere words is necessary. Superadded to the language of the contract, there must be some act of the parties amounting to a transfer of the possession, and an acceptance thereof by the buyer. In this case, every thing was done, with a view to consummating the sale, excepting payment, and that was offered by the defendant and refused by the plaintiffs. There is no difference, as to what shall constitute a delivery, between a sale for cash and one upon credit. If this had been an agreement for a sale upon a credit of the vendee alone, can any one doubt that there was a sufficient delivery? It really seems

to me there is not a pretext for charging the defendant, in the present action, with an unlawful conversion of the property in question.

The judgment of the special term should be reversed, the report of the referee set aside, and a new trial ordered, with costs to abide the event.

Ordered accordingly.

[CAYUGA GENERAL TERM, June 6, 1853. *Welles, Selden* and *T. R. Strong*, Justices.]